IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

WILLIAM MOHAT, et al.,            )   Case No. 1:09CV688

    Plaintiffs,                   )

                                  )   JUDGE DONALD C. NUGENT

-vs-                              )

                                  )

MENTOR PUBLIC SCHOOL DISTRICT     )
BOARD OF EDUCATION, et al.,       )   PLAINTIFFS' RESPONSE TO
                                  )   DEFENDANTS' MOTION FOR
    Defendants.                   )   JUDGMENT ON THE PLEADINGS

                                  )

                                  )

_____Now come plaintiffs, by and through undersigned counsel, and hereby respond to defendants' Motion for Judgment on the Pleadings. For the reasons set forth below, plaintiffs ask this Court to overrule the motion, except where noted, and to allow the case to go forward through discovery.

## I.  Defendants' contention that Janis Mohat lacks capacity to bring suit on behalf of Eric Mohat's estate and that the claims are time-barred

The defendants argue that all claims on behalf of Eric Mohat should be dismissed since the estate was not formed until after the statute of limitations.

The claims on behalf of the estate should not be dismissed as

Janis Mohat is the duly-appointed administratrix of the estate and even though the estate was formed after the Complaint was filed and after the statute of limitations had run, the claims are not barred because the formation of the estate relates back to the filing of the Complaint.

In Ramsey v. Neiman, 69 Ohio St.3d 508 (1994), a father filed a wrongful death action on behalf of his daughter, who died in a house fire. He claimed to be the personal representative and duly appointed administrator of the estates of his daughter and her two children, who also died in the fire. The defendants filed a motion to dismiss, claiming the plaintiff lacked standing because he had never been appointed administrator of the estates.

The Ohio Supreme Court ruled that the plaintiff lacked standing, but only because he had never applied or been appointed administrator. "R.C. 2125.02(C) requires the personal representative to be appointed before settlement of the case." Ramsey, supra at hn 2, emphasis added.

While the Ohio Supreme Court declined to answer the hypothetical question of whether the appointment of the plaintiff as administrator would have related back to the date of the filing of the lawsuit had he been appointed administrator after the statute of limitations (the question raised here), the Court cited two cases in which the appointment of an administrator after the statute of limitations was permitted to relate back.

In Kyes v. Penn. Rd. Co., 158 Ohio St. 362 (1952), an ancillary administrator was appointed in Ohio before the time limit

2

for bringing a wrongful death action had expired. The administrator's appointment was later vacated after the time limit expired, and a new administrator was substituted as the plaintiff. The court in <u>Kyes</u> held that the substitution was permissible because the cause of action remained unchanged and the administrator was only a nominal plaintiff and not the real party in interest.

In <u>Douglas v. Daniels Bros. Coal Co.</u>, 135 Ohio St. 641 (1939), the plaintiff filed a wrongful death action under the mistaken belief that she had been appointed administrator of the decedent's estate. She later discovered her mistake and corrected it by seeking and obtaining court appointment to be administrator. The court in <u>Douglas</u> allowed her amended petition to relate back to the date of the filing of the complaint because "the cause of action set up in the petition [was] in no way affected by the corrections contained in the amendment." <u>Douglas</u>, <u>supra</u> at 647, cited in <u>Ramsey</u>, <u>supra</u> at 512.

In a concurring opinion in <u>Ramsey</u>, Justice Paul Pfeifer--who was joined in the concurrence by three other justices--made the common-sense argument that should decide this issue:

> I agree with the lead opinion's conclusion that R.C. 2125.02(C) mandates that a personal representative in a wrongful death case be appointed by a court before the case is settled. That <u>is</u> what the statute expressly requires.
>
> I do not agree with the lead opinion's conclusion that R.C. 2125.02(A)(1) mandates that the personal representative be appointed

3

before he or she can enter the courthouse to file a wrongful death complaint.  That <u>is not</u> what the statute expressly requires.

Grief-stricken families spend significant periods of time deliberating whether a wrongful death action should be brought on behalf of a deceased loved one. These lengthy deliberations often result in a wrongful death complaint being filed at the last minute.

A relative who finally decides to file a wrongful death complaint must not be obligated to first go through the lengthy process of obtaining a court appointment before filing the complaint.  This delay would unnecessarily jeopardize a personal representative's chances of filing the complaint within the two-year limitations period.

The language of R.C. 2125.02(A)(1) and 2125.02(C) indicates that the personal representative must be court-appointed after the complaint has been filed, but before any judgment is entered or any settlement is reached.

Summary judgment would provide the appropriate mechanism to screen out those plaintiffs who have not received court appointment after filing their complaints.  In the present case, the plaintiff was not appointed as the decedents' personal representative after he filed his complaint.  Thus, the trial court correctly granted defendants' motions for summary judgment, but for the wrong reason.

<u>Ramsey v. Neiman</u>, 69 Ohio St. 3d 508, concurring opinion.

In this case, although the facts have not been developed sufficiently because it is only at the dismissal phase, as opposed to summary judgment, the scenario is exactly as envisioned by Justice Pfeifer.  Eric Mohat had no assets at his death, and therefore the parents did not open up an estate in his name.  The decision to file suit was made at the last minute relative to the

4

statute of limitations.   It was only after the filing of the lawsuit that the parents realized that in order to settle the case at some point, an estate would have to be opened.   Mrs. Mohat was subsequently named administratrix of the estate, but, as defendants have pointed out, the estate was inadvertently opened in Cuyahoga County rather than Eric's county of residence, Lake County.   This was due to an error by the Mohats' probate attorney, who mistakenly connected the fact that Mrs. Mohat worked in Euclid (in Cuyahoga County) with the fact that the family lived in Mentor (in Lake County).   Steps are being taken to correct the error so that Mrs. Mohat will be the duly-appointed administrator in the proper county.

This should relate back for several reasons:

1)   It may be a distinction without a difference, but the Mohats have not filed suit under the wrongful death statute; they have filed under 42 U.S.C. Section 1983 and other statutory principles.   The requirement for an administrator to be named and an estate to be opened probably applies nonetheless because claims are being made on behalf of Eric; but the Court should be aware of the distinction.

2)   Unlike in Ramsey, there is an administrator to the estate. The fact that the estate was opened after the lawsuit was filed and after the statute of limitations should be of no consequence, because the defendants are not prejudiced by the change in the status of the plaintiffs and they were on notice as to the claims and the identities of the parties at the time the complaint was

filed. As the Court said in <u>Stone v. Phillips</u>, 1993 Ohio App. LEXIS 3989 (Ohio Ninth Dist. App. 1993):

>       Ohio Rev. Code Section 2125.02(A)(1) provides, in pertinent part, that an action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death. The statute is procedural and remedial in nature and should be given a liberal construction.    O.R.C.  1.11  requires  that remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice.
>
>       Justice abhors the loss of causes of action by pure technicalities.  Trial courts liberally permit pleadings to be amended to cure a defect, so that determinations may be made on the merits. The change of the name of a plaintiff in the caption merely corrects a formality and does not change the cause of action.  The mere substitution of the name of a party entitled to bring the action for the name of one not so entitled does not change the cause of action and <u>may be made even after the statute of limitations has run.</u>   An amendment which corrects allegations with respect to a plaintiff's capacity to sue relates to the right of action and does not affect the substantive cause of action. Therefore, substitution of parties is the proper remedy, rather than dismissal of the action.
>
>       As to the doctrine of "relation back," the general rule is that the appointment of an administrator relates back to the time of the filing of the petition.  This rule appears just and equitable where a wrongful death claim may be the only asset of an estate. Relation-back is generally not applied if the defendant will be prejudiced by the introduction of a new cause of action.

6

> Stone v. Phillips, 1993 Ohio App. LEXIS 3989
> (Ohio Ninth Dist. App., (1993) at hn 1-3,
> emphasis added.

The Stone court specifically distinguished its ruling in Ramsey:

> In Ramsey v. Neiman (Jan. 27, 1993), Summit
> App. No. 15786, unreported, this court denied
> relation-back.  It appears from the facts
> recited in the opinion in that case, however,
> that the plaintiff may never have taken any
> steps to be appointed as personal
> representative, so there would have been
> nothing to relate back. At any rate, we chose
> not to extend the holding in Ramsey beyond its
> own facts; we do not believe that that
> decision mandates a similar result in this
> case.

> Stone v. Phillips, supra at p. 4.

In DeGarza v. Chetister, 62 Ohio App.2d 149 (1978), the Ohio Sixth District Court of Appeals invoked Ohio Civ.R. 17(A) in overturning a trial court's dismissal of an action in which the plaintiff was not properly appointed administrator of an estate.

> Civil Rule 17(a), real party in interest,
> provides in pertinent and applicable parts as
> follows:
> *******
> "No action shall be dismissed on the ground
> that it is not prosecuted in the name of the
> real party in interest until a reasonable time
> has been allowed after objection for
> ratification of commencement of the action by,
> or joinder or substitution of, the real party
> in interest. Such ratification, joinder or
> substitution shall have the same effect as if
> the action had been commenced in the mane of
> the real party in interest."
> ********
> It has long been recognized in Ohio that the
> proper remedy in cases of this kind is a
> substitution of parties, rather than a
> dismissal of the action. Kyes v. Pennsylvania

7

Rd. Co. (1952), 158 Ohio St. 362; Canterbury
v. Pennsylvania Rd. Co. (1952), 158 Ohio St.
68; and H.S. Leyman Co. v. Piggly-Wiggly Corp.
(1944), 45 Ohio Law Abs. 528.

DeGarza v. Chetister, 62 Ohio App.2d 149,155
(1978).


3)   This Court does not have jurisdiction to collaterally

attack the decision made by the Cuyahoga County Probate Court.

Probate courts in Ohio are courts of record
and their judgments are to be immune from
collateral attack, especially if the attack
raises a question of irregularity or
procedural defect. A void action of any court
in Ohio, including a probate court, may be
raised in a separate and distinct action even
as a collateral attack because any attack on a
void judgment is deemed to be a direct attack.

Subject-matter jurisdiction describes a
court's statutory or constitutional power to
adjudicate a case. Once a tribunal has
jurisdiction over both the subject matter of
an action and the parties to it, the right to
hear and determine is perfect; and the
decision of every question thereafter arising
is but the exercise of the jurisdiction thus
conferred. A judgment rendered by a court
lacking subject-matter jurisdiction is void ab
initio.

In addition to subject-matter jurisdiction, a
court must also have jurisdiction over a
particular case. Jurisdiction over a
particular case encompasses a trial court's
authority to determine a specific case within
that class of cases that is within its
subject-matter jurisdiction. Unlike lack of
subject-matter jurisdiction which renders a
judgment void, lack of jurisdiction over the
particular case merely renders the judgment
voidable. Thus, where it is apparent from the
allegations that the matter alleged is within
the class of cases in which a particular court
has been empowered to act, jurisdiction is
present. Any subsequent error in the
proceedings is only error in the "exercise of

8

> jurisdiction," as distinguished from the want of jurisdiction in the first instance.  If a judgment is merely voidable, it may not be collaterally attacked.
>
> An Ohio probate court is a court of limited jurisdiction, and possesses only the powers granted to it by statute.  R.C. 2101.24(A)(1)(b) gives the probate court exclusive jurisdiction to grant and revoke letters testamentary and of administration.
>
> Black v. Aristech Chemical Company, 2008 Ohio 7038 (Ohio Fourth Dist. App. 2008) at hn. 8,10,11.
> **********
>
> An order of a probate court appointing an executor, if made without jurisdiction, is void, and it may be disregarded in any other court; but, if made in the exercise of proper jurisdiction over the subject-matter and estate, although based upon erroneous conclusions of law or fact, it cannot be collaterally attacked.
>
> Wanamaker v. Davis, 2007 Ohio 4340 (Ohio Second Dist. App., 2007) at hn 8.

In this matter, the Cuyahoga County Probate Court clearly has subject-matter jurisdiction over the Eric Mohat estate and thus, the Probate Court's judgment cannot be collaterally attacked.  The fact that the Cuyahoga County Probate Court may not have properly exercised its jurisdiction makes the decision voidable, but not on collateral attack.  As mentioned earlier, plaintiffs are already taking steps to remedy the erroneous filing in Cuyahoga County by filing for an estate in Lake County.  Once that process is completed, the matter will relate back to the filing of the Complaint and the proper parties, in their proper capacities, will be named.

9

The Cuyahoga County Probate Court docket shows that Janis Mohat is the duly appointed as administratrix of the estate and that cannot be disturbed via collateral attack.  While plaintiffs acknowledge that this is in error, it does not divest the Probate Court of subject-matter jurisdiction and this Court has no jurisdiction to void the Probate Court ruling nor would it be proper for this Court to dismiss the Complaint based on the Probate Court's alleged lack of subject-matter jurisdiction.

Thus, this Court should overrule defendants' motion to dismiss and should order Mrs. Mohat to show proof within a reasonable period of time that she is the duly-appointed administratrix of Eric's estate in Lake County.  That would put this case in its proper posture and would allow the case to be heard on its merits.

## II.  Defendants' contention that the Section 1983 claims should be dismissed

Defendants argue that plaintiffs have not clearly stated that their Fourteenth Amendment claims are brought pursuant to Section 1983.  Defendant's Motion at 8, fn 1.  However, obviously defendants are on notice as to both the claims being asserted and the vehicle through which they are asserted (Section 1983), or else they would not have been able to respond.  Plaintiffs mention Section 1983 in their jurisdictional statement and then incorporate it by reference in the individual counts.  It is disingenuous at best for defendants to claim they are not properly put on notice as to the nature of plaintiffs' claims.

Defendants then claim that plaintiffs Mr. and Mrs. Mohat

10

cannot claim damages for the loss of the parent-child relationship resulting from Eric's death because Section 1983 claims are personal to the "party injured."  Defendants' Motion at 8.

However, the cases cited by defendants are inapposite and a review of pertinent case law regarding substantive due process reveals that the defendants misinterpret plaintiffs' claims and that the parents can indeed make claims pursuant to Section 1983 for their own injuries and damages.

Plaintiffs claim that defendants have violated their right of familial association under the Due Process Clause of the Fourteenth Amendment.  The right of familial association is a substantive due process right.  Griffin v. Strong, 983 F.2d 1544,1547 (10th Cir. 1993).

In Trujillo v. Board of County Commissioners, 768 F.2d 1186, the Tenth Circuit Court of Appeals analyzed a claim by a mother and her adult daughter that the death of their adult son and brother, Richard Trujillo, while incarcerated, deprived them of their constitutional right of familial association.  "In analyzing the asserted right of familial association, we focused mainly on the question of whether the right existed beyond the context of a parent/child relationship...." Suasnavas v. Stover, 196 Fed. Appx. 647, 655 (10th Cir. 2006).  Interestingly, while Suasnavas discussed the scope and limitations of the familial relationships aspect of the Fourteenth Amendment Due Process Clause, there was no discussion of whether family-members can assert these claims on their own behalf, because it is well-established that such claims

11

are indeed cognizable.  As the Trujillo court stated: "Many courts have recognized liberty interests in familial relationships other than strictly parental ones." Trujillo, supra at 1188, cited in Suasnavas, supra at 655, emphasis added.

The claims in Suasnavas were brought by a minor, her mother, grandmother and step-grandfather and other family-members, alleging that defendants, child welfare workers, violated their familial association rights under the Fourteenth Amendment.  The issue of whether relatives could bring constitutional claims in their own right for loss of familial rights was never raised, because it should be self-evident that each family-member has his/her own right to familial association.  Thus, in the instant case, the claims for violation of familial association are brought on behalf of Eric, but also by each parent in their own right.  If Eric was deprived of the right of family association by his death, then certainly his parents were, in their own right, deprived of their rights of family association.  So contrary to the assertion of the defendants, the parents are not asserting that they have standing to bring constitutional claims merely because Eric's rights were violated; they are claiming that their own rights to familial association were violated by the defendants' treatment of Eric. The plaintiffs' constitutional claims should not be dismissed on that basis.

The defendants also claim that the parents' claims should be dismissed because a third-party killed her child, rather than the defendants.  "Plaintiff Parents have failed to state a familial

association Section 1983 claim, as Eric was not killed by any of Defendant state actors." Defendants' Motion at 10.

As stated earlier, this is not a wrongful death claim. This is a claim that the parent plaintiffs had a constitutional right to the companionship, care, custody and management of their child, including the right to control his education and that Eric suffered damages as a result of actions and omissions of defendants, which included failing to stop the bullying Eric was experiencing. Eric was bullied and suffered damages; that is enough to establish his claim. His parents lost out on their right to his companionship. That is enough to establish their claim. The fact that he died is an element of damages, but the fact of his death and the manner of his death does not nullify his or his parents' claim. It is the defendants' conduct in failing to stop the bullying that creates the cause of action; whether Eric died or merely had to seek counseling is a damages issue and not dispositive of whether a cause of action exists. It matters not who or what killed him, any more than it would matter who drove him to the counselor's office if emotional distress damages were being sought. What matters is whose conduct caused Eric to suffer damages and whose conduct caused the parents to suffer a loss of companionship and loss of ability to control their son's education.

III. Defendants' contention that plaintiffs' Procedural Due Process claim should be dismissed.

Plaintiffs acknowledge that this case constitutes a substantive due process claim, rather than a procedural due process

13

claim, and do not object to the procedural due process claim being dismissed.

## IV.  Defendants' contention that Eric Mohat's Title IX claims should be dismissed

Defendants ask this Court to dismiss the Title IX claim brought on behalf of Eric because the claims brought on Eric's behalf are "time-barred and void."  Defendants' Motion at 11. Defendants apparently base this assertion on the arguments presented regarding the formulation of Eric's estate.  This being the defendants' only argument to dismiss Eric's Title IX claims, it stands to reason that if the Court is not persuaded by the defendants' statute of limitations and lack of standing arguments (pages 4-7 of Defendants' Motion), then the defendants would acknowledge that they have no valid reason to request the dismissal of Eric's Title IX claim.  Indeed it is well-settled that recipients of federal funds may be liable for damages under Title IX of the Education Amendments of 1972, 20 U.S.C.S. Section 1681-1688, for student-on-student sexual harassment, Vance v. Spencer County Public School Dist., 231 F.3d 253, hn 3 (6th Cir. 2000), and other forms of harassment and bullying. Patterson v. Hudson Area Schools, 551 F.3d 438, 446 ("A recipient of federal funds that remains 'deliberately indifferent to known acts of harassment' is liable for damages under Title IX. Vance, 231 F.3d at 260. '[T]he deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it.'" (citations omitted.))

14

Thus, assuming the Court overrules the motion to dismiss Eric's claims based on the timing and manner of Mrs. Mohat opening his estate, the Court should allow Eric's Title IX claims to go forward.

The plaintiffs acknowledge that the parents do not possess a Title IX claim in their own right and do not object to the Court dismissing the parents' Title IX claims, as long as Mrs. Mohat's claims on Eric's behalf go forward.  Nor do plaintiffs have a claim against the individual defendants under Title IX.  Any liability under Title IX is institutional liability aimed at the Board, which receives federal funds.

## V.  Defendants' contention that plaintiffs' state law claims should be dismissed based on sovereign immunity

The defendants claim that both the Board and the individual defendants are immune to the negligence and intentional tort claims because of either sovereign immunity pursuant to O.R.C. 2744, or qualified immunity.  Plaintiffs acknowledge that the Board is immune from state law claims pursuant to O.R.C. 2744.02(A)(1) and no exception exists pursuant to O.R.C. Section 2744.02(B).  The Board is also immune from the intentional tort claims pursuant to O.R.C. 2744.02.

However, the claims against the individual defendants are not subject to dismissal.  Under O.R.C. 2744.03(A)(6)(b), an employee of a political subdivision is immune from liability unless the employee's acts or omissions were in a wanton or reckless manner. The Complaint alleges just such conduct, bringing the claims within

the O.R.C. 2744.03(A)(6)(b) exceptions.  At this stage of proceedings, with no evidence having been adduced yet, the Court is obliged to accept all facts as true.  If, as alleged in the Complaint, the individual defendants knew of should have known about the harassment and bullying suffered by Eric Mohat, and failed to address it, causing damages to Eric and his parents, then plaintiffs have stated a cause of action and defeated defendants' claim of immunity.

"Accepting all factual allegations as true, a complaint should not be dismissed unless it appears beyond doubt from the face of the complaint that the plaintiff can prove no set of facts warranting recovery.  Accordingly, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.  Although a pleading need not state with precision all elements that give rise to a legal basis for recovery, it must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Piispanen v. Carter, 2006 Ohio 2382 at hn 3 (Ohio Eleventh Dist. App., 2006).

In Piispanen, supra, a case brought by parents on behalf of their minor child and themselves against a school district and a school official regarding student-on-student violence and bullying, which was defended by the same law firm as is defending this case,

the Ohio Eleventh District Court of Appeals did a cogent analysis
of the state sovereign immunity statute.  In that case, in which
the defendants had moved for dismissal, the Court granted dismissal
as to the governmental entity, and overruled dismissal as to the
individuals on the allegations that the individuals' acts and
omissions were with malice, in bad faith or wanton or reckless.
Clearly, as the <u>Piispanen</u> court stated, "employees who...engage in
intentional torts may be individually liable for their behavior."
<u>Sabulsky v. Trumbull Cty.</u>, 2002 Ohio 7275 (Ohio Eleventh Dist. App.
2002) at P14, cited in <u>Piispanen</u>, <u>supra</u> at P29.

Defendants incorrectly state that plaintiffs' claim is based
on the defendants' failure to prevent peer harassment and failure
to prevent Eric's suicide.  This is not what is being alleged.  The
plaintiffs' claims are based on the defendants' failure to act in
light of what they knew or should have known, i.e., that Eric was
repeatedly and constantly being subjected to severe and pervasive
harassment and bullying.  It is their failure to act, which
amounted to deliberate indifference (and which resulted in damages,
including Eric falling into a severe depression and committing
suicide as a result of the defendants' failure to act reasonably),
rather than their failure to predict or prevent, which is being
challenged.  At the pleading stage of proceedings, plaintiffs have
stated a case and defendants should not be dismissed out on
immunity theories until plaintiffs have had the opportunity to
provide evidence to support their pleadings.

Thus, for the plaintiffs' state law claims, to the extent that

17

immunity shields any of the defendants, it shields the Board but not the individual defendants and the state law intentional tort claims should survive.

## VI. Defendants' contention that plaintiffs' federal claims should be dismissed based on qualified immunity

The defendants ask that the individual defendants be dismissed from the federal Section 1983 claims based on qualified immunity.

Plaintiffs agree with defendants' statement of the legal standard for qualified immunity, but disagree that the individual defendants qualify for such status, and further argue that even if such a determination were to be made, it should be made at the summary judgment stage, after the plaintiffs have had an opportunity to conduct discovery, since the determination of qualified immunity is fact-based.

Defendants claim that they are entitled to immunity because plaintiffs did not have a clearly-established right to familial association and that even if they did, the defendants "could not have known they were putting Plaintiff Parents' right to familial relationships at risk by allegedly not doing enough to prevent bullying."  Defendants' Motion at 16.

There is no doubt that a constitutional right to familial relationships exists and that as of 2007 it was clearly established.

> The Supreme Court has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship. In Lassiter v. Department of Social Services, 452 U.S. 8, 27 (1981), the Court declared it

> "plain beyond the need for multiple citation"
> that a natural parent's "desire for and right
> to the companionship, care, custody and
> management of his or her children is an
> interest far more precious than any property
> right."  In Troxel v. Granville, 530 U.S.
> 57,65-66 (2000), (plurality opinion of
> O'Connor, J.), the Supreme Court described
> "the fundamental right of parents to make
> decisions concerning the care, custody and
> control of their children" as perhaps "the
> oldest of the fundamental liberty interests
> recognized by this Court."  This right to
> familial association has been recognized by
> the Court and protected in numerous other
> cases.  See, e.g., Lehr v. Robertson, 463 U.S.
> 248,258 (1983); Santosky v. Kramer, 455 U.S.
> 745,753 (1982).
>
> Kottmyer v. Maas, 436 F.3d 684,689-690 (Sixth
> Cir. 2006).

Moreover, regardless of whether the allegations are framed in terms of a constitutional right to familial association or the statutory right to be free from harassment based on perceived sexual orientation pursuant to Title IX, the defendants' obligations not to exhibit deliberate indifference to harassment and bullying is clearly established.  "Deliberate indifference" is found if the school administrator "responds to known peer harassment in a manner that is...clearly unreasonable."  Davis v. Monroe County Bd. of Educ., 526 U.S. 629,649 (1999).

In order to find that the law was clearly established, the Court need not find a prior case with identical or even "materially similar" facts.  Hope v. Pelzer, 536 U.S. 730 (2002).  The Court's task is to determine whether the preexisting law provided the defendants with "fair warning" that their conduct was unlawful.  Id., cited in Flores v. Morgan Hill Unified School Dist., 324 F.3d

19

1130, 1136-1137 (Ninth Cir. 2003).

In this case, the defendants had fair warning that they had an obligation to react in a reasonable manner to reports of peer harassment by students, and that if they were deliberately indifferent to such harassment and bullying, they could be held liable.

Thus, since at least 1999, it has been clearly established that school officials can be liable for deliberate indifference to known peer harassment, precluding a grant of qualified immunity at this stage of proceedings.

The obligation of school employees to prevent bullying in schools and to act on bullying allegations when notified is clearly established.

Further, whether the defendants "did not act unreasonably by ignoring Plaintiffs' clearly established right o familial relationships," Defendants' Motion at 16, is a jury question and dependent on facts and evidence not yet adduced.  The question is not whether the defendants' alleged ignoring of bullying is more or less serious than police officers' failure to arrest a violent man; the question is whether the reasonable school official knew or should have known of his/her obligation to take steps to deal with bullies in the school.

## VII.  Defendants failure to argue for dismissal of the Monell claims

The defendants make no argument, and no mention whatsoever, of plaintiffs' <u>Monell</u> claim, so that claim against the Board should go forward.

CONCLUSION

For the reasons set forth above, this Court should overrule in part the defendants' motion to dismiss.

Respectfully submitted,


/s/Kenneth D. Myers
KENNETH D. MYERS [0053655]
6100 Oak Tree Blvd., Suite 200
Cleveland, OH  44131
(216) 241-3900

Counsel for Plaintiffs

CERTIFICATE OF SERVICE

The foregoing has been sent, via the Court's electronic filing service, to counsel for all defendants on this 1st day of November, 2009.


/s/Kenneth D. Myers
KENNETH D. MYERS

Counsel for Plaintiff

21