# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM MOHAT, *et al.*, | ) | CASE NO. 1:09CV688 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANTS' REPLY TO** |
| MENTOR EXEMPTED VILLAGE SCHOOL | ) | **PLAINTIFFS' RESPONSE TO MOTION** |
| DISTRICT BOARD OF EDUCATION, *et al.*, | ) | **FOR JUDGMENT ON THE PLEADINGS** |
| | ) | |
| Defendants. | ) | |

Defendants Mentor Exempted Village School District Board of Education ("Board"), Jacqueline A. Hoynes, Joseph Spiccia, and Thomas M. Horvath (collectively "Defendants") submit their Reply to Plaintiff's Response to Motion for Judgment on the Pleadings.

Respectfully submitted,

*/s/ Lindsay Ferg Gingo*
David Kane Smith (0016208)
Krista Keim (0067144)
Lindsay Ferg Gingo (0083607)
BRITTON SMITH PETERS
　　　& KALAIL CO., L.P.A.
3 Summit Park Drive, Suite 400
Cleveland, OH 44131
Telephone: (216) 503-5055
Facsimile:  (216) 503-5065
Email: dsmith@ohioedlaw.com
　　　 kkeim@ohioedlaw.com
　　　 lgingo@ohioedlaw.com

*Attorneys for Defendants Mentor Exempted*
*Village School District Board of Education,*
*Jacqueline Hoynes, Joseph Spiccia, and*
*Thomas Horvath*

### TABLE OF CONTENTS

I.  INTRODUCTION ...............................................................................................1

II.  LAW AND ARGUMENT ..................................................................................1

    A.  This Court should dismiss all claims filed on behalf of Eric
        Mohat's estate ..........................................................................................1

        1.  Whether Janis Mohat can sue on behalf of Eric's estate is
            an issue of capacity ........................................................................2

        2.  Plaintiffs fail to show that Eric's estate's claims are not
            time-barred .....................................................................................3

            a.  *Ramsey v. Neiman* ..............................................................4
            b.  *Kyes v. Penn. Rd. Co* ..........................................................5
            c.  *Douglas v. Daniels Bros. Coal Co.* .....................................6
            d.  *Stone v. Phillips* ................................................................7
            e.  *DeGarza v. Chetister* ........................................................8

    B.  This Court should dismiss Plaintiff Parents' Fourteenth
        Amendment substantive due process claim via Section 1983, as
        alleged in Count 1 of the Amended Complaint ..........................................9

        1.  Plaintiffs attempt to circumvent established Sixth Circuit
            case law to avoid dismissal of their Fourteenth Amendment
            claim ..............................................................................................9

        2.  Plaintiff Parents cannot bring a Section 1983 action for loss
            of a parent-child relationship because of that child's death ...........11

        3.  Even if parents could sue under Section 1983 for loss of
            companionship resulting from a child's death, Plaintiff
            Parents' Fourteenth Amendment claim should still be
            dismissed .......................................................................................13

    C.  This Court should dismiss Plaintiffs' Section 1983 claim in Count
        2....................................................................................................................15

    D.  This Court should dismiss Plaintiffs' Title IX claim in Count 3 ...............17

    E.  This Court should dismiss all claims against the individual
        Defendants ................................................................................................18

        1.  The individual Defendants have qualified immunity for
            Plaintiffs' Section 1983 claim .......................................................18

i

2.      The individual Defendants did not act "recklessly" in
        violation of state law. ......................................................................20

IV.     CONCLUSION.......................................................................................................22

CERTIFICATE OF SERVICE ...........................................................................................23

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                    <u>Page</u>

*Alexander v. Beale St. Blues Co., Inc.*, 108 F.Supp.2d 934 (W.D. Tenn. 1999) ..............12

*Brooks v. Knapp,* 221 Fed.Appx. 402, (6th Cir. 2007).................................................12, 13

*Collins v. City of Harker Heights*, 503 U.S. 115 (1992).....................................................15

*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999)............................................19

*DeGarza v. Chetister*, 405 N.E.2d 331 (Ohio App. 6 Dist. 1978)..................................8, 9

*DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989) ...................14

*Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*,
103 F.3d 495 (6th Cir. 1996) ...............................................................................15, 16, 17

*Douglas v. Daniels Bros. Coal Co.*, 22 N.E.2d 195 (Ohio 1939).......................................6

*Fine v. Huff's Inv. Co., Inc.*, No. 3:05-CV-294, 2006 WL 1027953, (S.D. Ohio
April 19, 2006)....................................................................................................................3

*Friends of Tims Ford v. Tennessee Valley Authority*, No. 08-5706, 2009 WL
3673063, (6th Cir. Nov. 6, 2009).......................................................................................3

*Garner v. Memphis Police Dep't.*, 8 F.3d 358 (6th Cir. 1993).........................................15

*Gravely v. Madden*, 964 F.Supp. 260 (S.D. Ohio 1995)...................................................12

*Hodge v. City of Cleveland*, No. 72283, 1998 WL 742171 (Ohio App. 8 Dist Oct.
22, 1998) ...........................................................................................................................21

*Jaco v. Bloechle*, 739 F.2d 239 (6th Cir. 1984) ....................................................11, 12, 13

*Kelly v. Wehrum*, 956 F.Supp. 1369 (S.D. Ohio 1997)................................................12, 13

*Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006).................................................12, 13

*Kyes v. Pennsylvania R.R. Co.*, 109 N.E.2d 503 (Ohio 1952)........................................5, 6

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ................................................................18

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)........................................................15

*Piispanen v. Carter*, No. 2005-L-133, 2006 WL 1313159 (Ohio App. 11 Dist. May 12, 2006)............................................................................................20

*Pingue v. Pingue*, No. 06-CAE-10-0077, 2007 WL 2713763 (Ohio App. 5 Dist. Sept. 18, 2007) ........................................................................................8

*Purnell v. City of Akron*, 925 F.2d 941 (6th Cir. 1991) ....................................12

*Ramsey v. Neiman*, 634 N.E.2d 211 (Ohio 1994)....................................4, 5, 6, 8

*Robertson v. Wegmann,*, 436 U.S. 584 (1978)................................................11

*Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907 (6th Cir. 1995) ...........................14

*Stone v. Phillips*, No. 15908, 1993 WL 303281 (Ohio App. 9 Dist. Aug. 11, 1993) ......7, 8

*Theobald v. Univ. of Cincinnati*, No. 09AP-269, 2009 WL 3155137 (Ohio App. 10 Dist. Sept. 30, 2009)................................................................8

*Thomas v. Byrd-Bennett*, No. 79930, 2001 WL 1557516 (Ohio App. 8 Dist. Dec. 6, 2001) .....................................................................................21

*Wannamaker v. Davis*, No. 2005-CA-151, 2007 WL 2405708, (Ohio App. 2 Dist. August 24, 2007).............................................................................3, 9

*Wyke v. Polk County Sch. Bd.*, 129 F.3d 560 (11th Cir. 1997)...................13, 14

**Statutes**                                                                                       **Page**

20 U.S.C. § 1681 .................................................................................1, 18, 22

42 U.S.C. § 1983............................................1, 2, 3, 10, 11, 12, 13, 14, 15, 16, 17, 20, 22

42 U.S. C. § 1988 ...................................................................................11

O.R.C. § 2125.02(C) ..............................................................................2, 5

O.R.C. § 2305.21 ....................................................................................11

O.R.C. § 2744(A)(6) ................................................................................20

## I.       INTRODUCTION

In their Response, Plaintiffs concede that many of their claims lack merit, including: (1) their procedural due process claim; (2) their Title IX claim against the Board; (3) the Title IX claim filed on behalf of William and Janis Mohat individually; and (4) Plaintiffs' state claims against the Board.  Although Plaintiffs assert their remaining claims are plausible, they are not. Claims filed by Janis Mohat as personal representative of Eric Mohat's estate are time-barred, as the estate was filed after the relevant statutes of limitations expired.  Plaintiff Parents' Fourteenth Amendment claim is also meritless, because parents cannot maintain a Section 1983 claim for the loss of a parent-child relationship resulting from a child's death in the Sixth Circuit. Moreover, Plaintiff Parents have no Section 1983 "failure to train" claim, as Defendant Board has not deprived Plaintiff Parents of any constitutional right.  Defendant Board also does not have a "custom" of ignoring harassment and/or suicide.  The individual Defendants have a qualified immunity from suit because they did not violate, and Plaintiff Parents have not identified, any clearly established constitutional rights.  Finally, Plaintiffs have not stated any state cause of action against the individual Defendants.  Even if they had, Plaintiffs' conclusory allegation that the individual Defendants acted recklessly is insufficient to withstand a Rule 12(c) motion.  This Court should, therefore, grant Defendants judgment on the pleadings for all of Plaintiffs' claims.

## II.      LAW AND ARGUMENT

### A.       This Court should dismiss all claims filed on behalf of Eric Mohat's estate.

Plaintiffs filed their Complaint nearly eight months ago, suing on their own behalf and "on behalf of the Estate of Eric Mohat."  Complaint ¶ 3.  Plaintiffs did not, however, establish the estate in the proper probate court until November 9, 2009, months after the statutes of limitations expired.  Despite this, Plaintiffs erroneously claim that Janis Mohat's appointment as

the estate's representative should relate back to the date Plaintiffs filed their initial Complaint. Plaintiffs rely on an extensive list of cases to support this assertion, none of which directly addresses the issue at hand: whether a personal representative lacks the capacity to sue on behalf of an estate, *where that estate was established after the estate's claims' statutes of limitations expired*. Ohio law does not allow personal representatives to sue on behalf of an estate that does not exist in order to avoid violating statutes of limitations. To hold otherwise would render the statutes meaningless.

**1. Whether Janis Mohat can sue on behalf of Eric's estate is an issue of capacity.**

As a preliminary matter, Defendants seek to clarify and narrow the legal issue identified above. Whether an individual can sue on behalf of a decedent's estate is a question of capacity. Capacity relates to a party's personal or official right to litigate the issues presented in the pleadings. Lack of capacity to sue deprives a party of the right to come into court, *and it is determined without consideration of the plaintiff's causes of action*. Whether an estate is a proper party with the capacity to sue in this Court is governed by Ohio law. Motion p. 4.

Ohio courts have addressed whether an estate's personal representative has the capacity to sue in the context of wrongful death suits under O.R.C. § 2125.02(C). As Plaintiffs point out in their Response, they have not filed suit under the wrongful death statute; they have filed under 42 U.S.C. § 1983 and other statutory principles. Response p. 5. "The requirement for an administrator to be named and an estate to be opened probably applies nonetheless because claims are being made on behalf of Eric; but the Court should be aware of the distinction." *Id.* Plaintiffs are correct that this is a "distinction without a difference." *Id.*

Only an administrator of an open estate can sue on the estate's behalf, regardless of the claims asserted. Although the relevant Ohio case law addressing a personal representative's

2

capacity is in the context of wrongful death suits, capacity is determined without consideration of the estate's claims.  Capacity examines whether the personal representative had the right to state *any cause of action*—wrongful death, a civil rights claim, or otherwise.  In fact, a federal court recently considered Ohio wrongful death case law when analyzing whether a decedent's family member could sue under Section 1983, among other statutes, despite the family member establishing the estate after the statute of limitations expired.  *Fine v. Huff's Inv. Co., Inc.*, No. 3:05-CV-294, 2006 WL 1027953, at *3 (S.D.Ohio April 19, 2006).[1]  Thus, here, whether Janis Mohat has the right to sue on behalf of Eric's estate is a capacity issue, which must be analyzed under Ohio case law, regardless of the claims asserted in those cases.

### 2. Plaintiffs fail to show that Eric's estate's claims are not time-barred.

Plaintiffs claim that "Janis Mohat is the duly-appointed administratrix of the estate and even though the estate was formed after the Complaint was filed and after the statute of limitations had run, the claims are not barred because the formation of the estate relates back to the filing of the Complaint."  Response p. 2.  Plaintiffs cite to five Ohio cases to support this

---

[1] The *Fine* court did not decide whether the subsequent filing of an estate would relate back, as the plaintiffs never attempted to amend their complaint to identify the estate's representative. *Id.* at *3.  Moreover, *Fine* did not address the statute of limitations question at issue in this case. The *Fine* court examined whether the subsequent filing of an estate should relate back as an issue of standing, per the defendants' argument.  When examining this question, courts sometimes use the terms capacity, standing, and real party in interest interchangeably, although they are not the same legal theories. *See Wannamaker v. Davis*, No. 2005-CA-151, 2007 WL 2405708, *7 (Ohio App. 2 Dist. August 24, 2007).  The real party in interest is the individual who is directly benefited or injured by the outcome of the case. *Id.* at *7.  Capacity examines whether a party is personally qualified to litigate a case and is generally determined without regard to the claims be asserted. *Id.* at *8.  Standing refers to the notion that a party must be injured by the alleged act and that the injury must be redressable by the requested relief.  *Friends of Tims Ford v. Tennessee Valley Authority*, No. 08-5706, 2009 WL 3673063, *6 (6th Cir. Nov. 6, 2009).  Here, Defendants do not argue that Janis Mohat lacks standing to sue on the estate's behalf, but, instead, argue that she lacks the capacity to sue, as she was not timely appointed representative of the estate.

3

contention, almost none of which addresses the relevant issue: whether a personal representative lacks the capacity to sue on behalf of an estate, where that estate was established after the estate's claims' statutes of limitations expire.

### a. *Ramsey v. Neiman*

Plaintiffs first rely on *Ramsey v. Neiman*, where a father sued for wrongful death on behalf of his deceased daughter and grandchildren.  634 N.E.2d 211, 211 (Ohio 1994).  The father claimed in his complaint to be the personal representative of his daughter's estate, even though he was never appointed representative.  *Id.*  The lower court granted the defendants' motion to dismiss and the appeals court and Ohio Supreme Court affirmed, holding that an estate's cause of action must be brought in the name of its court-appointed personal representative.  *Id.* at 211, 214 (holding in context of wrongful death suit).  In addition, the father argued that if he were appointed the estate's representative, then that appointment should relate back to the date he filed the complaint, even though the statute of limitations had run on the estate's claim.  *Id.* at 214.  The court refused to address this, stating "we cannot decide the question whether [the father's] appointment will relate back to the date he filed his complaint because the question is based on an assumed set of facts," since the father was not named the estate's representative at any time during the pendency of the case.  *Id.*  Thus, the court "decline[d] to hold that appellant's future appointment as personal representative of the decedent's estate—should such an appointment ever occur—will relate back to the date he filed his complaint."  *Id.*

In this case, Plaintiffs admit that the *Ramsey* court declined to answer "the question raised here."  Response p. 2.  *Ramsey*, therefore, clearly does not apply.  Despite this, Plaintiffs attempt to skew the holding in *Ramsey*, explaining that "[t]he Ohio Supreme Court ruled that the plaintiff lacked standing, but only because he had never applied or been appointed administrator.

'R.C. 2125.02(C) requires the personal representative to be appointed before settlement of the case.' *Ramsey,* supra at hn 2." *Id.* (emphasis omitted). The *Ramsey* court, however, did not dismiss the estate's claims "only" because the father was never appointed the estate's personal representative "before settlement of the case." The court referenced part of the wrongful death statute that discusses settlement,[2] but only to support its holding that a court-appointed representative, and no other person, may act on behalf of an estate. In fact, the dissenting opinion in *Ramsey*—an opinion that Plaintiffs rely upon—succinctly states that the majority opinion "mandates that the personal representative be appointed *before he or she can enter the courthouse to file a wrongful death complaint.*" *Id.* (emphasis added). The majority opinion also repeatedly affirms its holding that only an estate's court-appointed representative may bring a claim on the estate's behalf. *Id.* at 211-214. Plaintiffs' assertion that the *Ramsey* court only dismissed the father's claims because he had never been appointed the estate's personal representative—either before or after filing the complaint—is false.

### b. *Kyes v. Pennsylvania R.R. Co.*

Plaintiffs next rely on *Kyes*, a 1952 case that the *Ramsey* court identified and, in dicta, rejected as support for the father's argument that his subsequent appointment should relate back to the complaint's filing date. *Id.* at 214, citing *Kyes v. Pennsylvania R.R. Co.*, 109 N.E.2d 503 (Ohio 1952). In *Kyes*, an ancillary personal representative filed suit on behalf of the decedent's estate before the wrongful death claim's statute of limitations expired. *Id.* at 504. *The estate, therefore, was open before the complaint was filed.* The representative's appointment was vacated after the time limit ran, and the proper individual was substituted as personal representative of the estate. *Id.* The lower courts held that the substitution was proper, and the

---

[2] The statute reads, "[a] personal representative appointed in this state with the consent of the court making the appointment . . . may settle with the defendant in the amount to be paid." O.R.C. § 2125.02(C).

5

Ohio Supreme Court affirmed, explaining that the cause of action remained the same and the representative was not the real party in interest.  *Id.* at 505.

Here, *Kyes* does not apply.  Unlike in *Kyes,* neither Janis nor William Mohat were appointed Eric's estate's representative before filing their complaint.  They were also not appointed representative before the statutes of limitations expired on the estate's claims. Moreover, the *Ramsey* court in dicta recognized that *Kyes* should be limited to its facts, explaining that "*Kyes* addressed the substitution of one appointed plaintiff for another . . . ." *Ramsey*, 634 N.E.2d at 214.  There is, likewise, no justification for this Court to expand the decision beyond its facts.

### c.    *Douglas v. Daniels Bros. Coal Co.*

Plaintiffs also rely on *Douglas* to support their assertion that the estate's claims are not time-barred.  *Douglas* is a second case the *Ramsey* court rejected, in dicta, as support for the father's argument that his subsequent appointment should relate back to the complaint's filing date.  *Id.* at 214, citing *Douglas v. Daniel Bros. Coal Co.*, 22 N.E.2d 195 (Ohio 1939). Defendants addressed the seventy-year-old *Douglas* case in their Motion, explaining that "a widow thought she was appointed personal representative of her deceased husband's estate, although she was not, and filed suit on behalf of that *open estate*. . . .  Under those circumstances, the Ohio Supreme Court held the widow's subsequent appointment related back to the day she filed the original complaint – a day before the statute of limitations ran . . . ." Motion p. 6.

Here, unlike in *Douglas* and *Kyes*, no individual opened or even filed to open Eric's estate before the statutes of limitations expired.  Also, unlike in *Douglas*, Plaintiffs made no mistake regarding appointment, despite their claim that "[i]t was only after the filing of the lawsuit that the parents realized that in order to settle the case at some point, an estate would

have to be opened." Response p. 5. Defendants are baffled by this statement, as Plaintiffs' original complaint states that William and Janis Mohat are "suing on their own behalf and on behalf of the estate of Eric Mohat." Complaint ¶ 3. Plaintiffs made no mistake. They filed this lawsuit on their own behalf and on behalf of Eric's estate, knowing that the estate did not exist. They waited three months to create Eric's estate, and even then, Plaintiffs filed in a court lacking subject-matter jurisdiction. Plaintiffs finally filed the estate in Lake County on November 9, 2009. These facts in no way resemble those in *Douglas*, where the widow genuinely believed she had been named representative of her husband's estate, openned before the statute of limitations expired.

### d. *Stone v. Phillips*

Plaintiffs next cite to *Stone*, where a mother sued on behalf of her deceased children's estate, erroneously claiming she was the estate's administrator. No. 15908, 1993 WL 303281, at *1 (Ohio App. 9 Dist. Aug. 11, 1993). The trial court granted the mother leave to amend the case caption by substituting the name of her attorney as administrator of the estate. *Id.* It is unclear from the court's opinion whether the substitution occurred after the estate's claim's statute of limitations expired, as the court did not analyze the issue in depth. The court compared *Stone* to *Ramsey*, explaining that *Ramsey* did not apply because the *Ramsey* plaintiff never took "steps to be appointed as personal representative, so there would have been nothing to relate back." *Id.* at *3. (*Ramsey*, of course, does not apply here, as the court specifically declined to answer the question at issue in this case.) The *Stone* court, therefore, analyzed whether a caption change would relate back to the complaint's original filing date as opposed to answering the more substantive question of whether a court should disregard the statute of limitations when an estate is filed after the limitations period expires.

7

Assuming the trial court in *Stone* allowed a caption change after the statute of limitations expired, this Court should note that no Ohio court has relied on *Stone* for that issue since it was decided in 1993.  Other courts have, instead, re-affirmed that the statute of limitations' purpose is fairness to both sides.  "Once a plaintiff knows of an injury and the cause of the injury, the law gives the plaintiff a reasonable time to file suit."  *Pingue v. Pingue*, No. 06-CAE-10-0077, 2007 WL 2713763, at *7 (Ohio App. 5 Dist. Sept. 18, 2007).  Here, Plaintiffs had two years to file suit on behalf of Eric's open estate, which they failed to do.  Plaintiffs argue that this Court should ignore that fact, because Defendants will not be prejudiced by this failure.  Plaintiffs cannot, however, avoid the effect of a statute of limitations by showing that a defendant in a particular case is not affected by the inability to defend itself against stale claims.  *Theobald v. Univ. of Cincinnati*, No. 09AP-269, 2009 WL 3155137, at *4 (Ohio App. 10 Dist. September 30, 2009).

### e.    *DeGarza v. Chetister*

Finally, Plaintiffs rely on *DeGarza*, where a mother brought a wrongful death claim on behalf of herself and her children for her husband's death.  405 N.E.2d 331, 332 (Ohio. App. 6 Dist. 1978).  The defendant moved to dismiss the claim because the widow was not named the decedent's estate's personal representative.  *Id.* at 333.  Per the defendant's suggestion, the court appointed an ancillary administrator of the estate and inserted his name into the complaint.  *Id.* "Following years of tangled skein and a procedural morass," the case reached the appeals court. *Id.* at 334.   The court held that it was proper for the trial court to insert the ancillary administrator's name into the complaint.  *Id.*  Like with many of the cases Plaintiffs rely on, the court did not discuss the issue here: whether a personal representative lacks the capacity to sue on behalf of an estate, where that estate was established after the estate's claims' statutes of limitations expire.

8

In their Motion, Defendants explained that the most recent Ohio case to address the issue—not various decades-old cases—rejects Plaintiffs' contention that a personal representative's appointment relates back to the complaint's filing date, even if an estate is filed after the statute of limitations runs.  Motion p. 5-6, citing *Wannamaker v. Davis*, No. 2005-CA-151, 2007 WL 2405708, (Ohio App. 2 Dist. August 24, 2007) at *7 (holding that administrator's appointment does not relate back to the complaint's filing date, where the estate is established after the statute of limitations runs).  This Court should also reject Plaintiffs' argument.  They should not be rewarded for repeatedly failing to create an estate within the statutes of limitations.

**B.    This Court should dismiss Plaintiff Parents' Fourteenth Amendment substantive due process claim via Section 1983, as alleged in Count 1 of the Amended Complaint.**

**1.    Plaintiffs attempt to circumvent established Sixth Circuit case law to avoid dismissal of their Fourteenth Amendment claim.**

Plaintiffs argue that "defendants misinterpret plaintiffs' claims and that the parents can indeed make claims pursuant to Section 1983 for their own injuries and damages."[3]  Response p.

---

[3] Plaintiffs also seem to assert that Eric Mohat (or his estate) is also bringing a Fourteenth Amendment claim via Section 1983 in Count 1.  *See* Response p. 13 (stating that "Eric was bullied and suffered damages; that is enough to establish his claim).  The Complaint, however, is devoid of this claim and only states that:

> "[t]he actions of defendants constitute a violation of plaintiffs' constitutional right, pursuant to the substantive and procedural due process clauses of the Fourteenth Amendment, to familial relationships, which includes the right to the companionship, care, custody and management of their child, including the right to control his education.  As a direct result of the actions and conduct of defendants, plaintiffs suffered and continue to suffer extreme emotional pain and suffering and loss of companionship with their son."

Amended Complaint ¶¶ 23, 24.  Besides using the word "plaintiffs" (i.e., failing to specify Plaintiff Parents), nothing in Count 1 implies that the claim is being brought on behalf of Eric Mohat and/or his estate.  Instead, the Count alleges a violation of parental rights and the resulting damages.  This Court, therefore, should find that Count 1 alleges a Fourteenth Amendment claim on behalf of Plaintiff Parents alone.

9

11.  Plaintiffs attempt to show that they bring this Fourteenth Amendment claim, not because Defendants caused Eric's death, but because Eric was allegedly bullied in school.  Specifically, Plaintiffs state that "[i]t is the defendants' conduct in failing to stop the bullying that creates the cause of action; whether Eric died or merely had to seek counseling is a damages issue and not dispositive of whether a cause of action exists."  Response p. 13.  Defendants find this argument disingenuous and a thinly-veiled attempt to avoid Sixth Circuit case law holding that parents cannot bring a Section 1983 action for loss of a parent-child relationship due to a child's death. *See* Response p. 11-13 (Plaintiffs rely only on Tenth Circuit case law to support their assertion that Plaintiff Parents have a cognizable Section 1983 claim).  Plaintiff Parents do not allege that they even knew of the alleged bullying before Eric's death, let alone that their parental rights were damaged by the bulling.

In reality, it is clear Plaintiff Parents' loss of companionship claim is based on Eric's death, not the alleged bullying he suffered.  Plaintiffs' Amended Complaint is replete with statements that Defendants' acts caused Eric's suicide, which resulted in Plaintiff Parents' damages, not with statements that Plaintiffs sue based only on the alleged bullying.  For example, in their Complaint Plaintiffs' state that "[d]ue to the actions and omissions of the defendants . . . Eric Mohat became so depressed that he committed suicide, costing him his life and costing his parents the companionship of their son . . . ."  Amended Complaint ¶ 20.  In their Fourteenth Amendment claim in Count 1, Plaintiffs assert that, "[a]s a direct result of [Defendants' actions], plaintiffs suffered . . . loss of companionship with their son."  *Id.* at ¶ 24.  Plaintiffs also blame Eric's death on Defendants' acts in Counts 2, 3, 4, and 5.  *Id.* at ¶¶ 27, 30, 33, 36 (explaining that Defendants' acts caused Eric's loss of life).  Plaintiff Parents, therefore, cannot reasonably claim that they are not bringing their Fourteenth Amendment parental rights

claim for any other reason but for the loss of a parent-child relationship resulting from Eric's death.

### 2. Plaintiff Parents cannot bring a Section 1983 action for loss of a parent-child relationship because of that child's death.

In the Sixth Circuit, parents cannot maintain a Section 1983 claim for the loss of parent-child relationship, where their claim is based on a child's death. A Section 1983 action is "an action personal to the party injured." *Jaco v. Bloechle*, 739 F.2d 239, 241, 245 (6th Cir. 1984). The text of Section 1983 does not state whether an action brought under that civil rights statute survives "the party injured['s]" death. *Id.* at 241. The U.S. Supreme Court, however, explained that whether a Section 1983 claim survives death is governed by 42 U.S.C. § 1988 ("Section 1988"). *Id.*, citing *Robertson v. Wegmann,*, 436 U.S. 584 (1978). Section 1988 states, in relevant part, that if federal law is:

> deficient in the provisions necessary to furnish suitable remedies and punish offenses, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the case . . ."

42 U.S.C. § 1988. Thus, because Section 1983 fails to state whether a claim survives an individual's death, Ohio's survival statute governs that issue. *Jaco*, 739 F.2d at 241 (explaining that the law of the forum is "'the principle reference point in determining survival of civil rights actions . . . .").

Ohio's survivorship statute states that "injuries to the person" survive death; however, when an act causes an individual's instant death, there is no injury to the person and no cause of action. *Id.* at 241-243, citing O.R.C. § 2305.21 (Ohio's survival statute). Recognizing this, the Sixth Circuit held that Ohio law is "inconsistent with" Section 1983's purpose, as it allows a

11

personal cause of action only if an individual survives long enough to be physically injured. *Id.* at 244-245. The Sixth Circuit, therefore, held that the "*decedent's civil rights claim, a personal cause of action, may be pursued in the name of the decedent's personal representative, as defined by the law of the forum jurisdiction . . . .*" *Id.* at 245 (emphasis added). Relying on *Jaco*, numerous district courts have held that only the decedent's estate—not parents—may sue under Section 1983 based on the decedent's death. *Alexander v. Beale St. Blues Co., Inc.*, 108 F.Supp.2d 934, 951-954 (W.D. Tenn. 1999) (holding that decedent's family cannot bring Section 1983 claim); *Gravely v. Madden*, 964 F.Supp. 260, 264 (S.D. Ohio 1995) (same); *Kelly v. Wehrum*, 956 F.Supp. 1369, 1373 (S.D. Ohio 1997) (same); *See also Brooks v. Knapp,* 221 Fed.Appx. 402, 407-408 (6th Cir. 2007) citing *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006);[4] *Purnell v. City of Akron*, 925 F.2d 941, 948 n. 6 (6th Cir. 1991) (explaining that "a number of circuit courts have concluded that a decedent's immediate family may bring a section 1983 claim for deprivation of the parent-child relationship in the wrongful death context" but that "[i]n this Court we have held, however, that Section 1983 provides a cause of action which is personal to the injured party . . . .").

For example, in *Kelly v. Wehrum*, a mother brought a Section 1983 claim on her own behalf for loss of companionship and on behalf of her son's estate. 956 F.Supp. at 1370. Relying on *Purnell, Jaco,* and *Gravely* (discussed in Defendants' Motion p. 9), the court held that a Section 1983 claim is personal to the decedent. *Id.* at 1372-1374. Thus, "[n]o claim under § 1983 survives as to a relative's loss of companionship resulting from the death of the decedent"

---

[4] In *Kottymyer*, parents sued under Section 1983, claiming their parental rights were violated by a child abuse investigation. 436 F.3d at 687. The court recognized that parents have a liberty interest in the care and companionship of their child, but held that the parents' rights were not violated by the investigation *Id.* at 690-691. Although the child at issue was deceased, the parents did not sue because the defendants allegedly caused the child's death. The court, therefore, did not address the issue here: whether parents can sue under Section 1983 for the loss of a parent-child relationship resulting from a child's death.

12

and the mother was limited to suing on behalf of her son's estate. *Id.* at 1373. Here, the same analysis applies. Plaintiff Parents' Fourteenth Amendment loss of companionship claim via Section 1983 should be dismissed, because that Section 1983 claim is personal to Eric's estate.

> **3. Even if parents could sue under Section 1983 for loss of companionship resulting from a child's death, Plaintiff Parents' Fourteenth Amendment claim should still be dismissed.[5]**

In order to state a Section 1983 claim, Plaintiffs Parents must show that: (1) the conduct in controversy was committed by a person acting under color of law; and (2) the conduct deprived the plaintiff of a federal right, either constitutional or statutory. *Kottmyer*, 436 F.3d at 688. Plaintiffs cannot establish either element. First, Eric was not killed by Defendants; he took his own life. *See Brooks*, 221 Fed.Appx. at 404-407 (discussed in Defendants' Motion p. 9-10; holding that state actors not liable because they did not kill the victim). Second, Defendants have found no case—and Plaintiffs cite to none—where a court has held a school district liable for a student suicide under the Fourteenth Amendment via Section 1983. *See* Motion p. 18-19 (listing cases where school *not* held liable).

For example, in *Wyke v. Polk County Sch. Bd.*, a student committed suicide at his home after twice attempting suicide at school. 129 F.3d 560, 563-565 (11th Cir. 1997). The school knew about the suicide attempts, and one administrator stated that he would take care of the issue but never informed the student's mother. *Id.* The mother sued individually and on behalf of her son's estate, claiming that the school was deliberately indifferent to the mother's constitutional right to care and custody of her son. *Id.* at 565. The trial court granted the school board's motion for judgment on the pleadings as to the Section 1983 claim, and the Eleventh Circuit affirmed, holding that the school board did not violate a constitutional duty to the student or his

---

[5] If the Court finds that Eric's estate also alleged a Fourteenth Amendment violation in Count 1, this analysis applies to Eric's estate's claim as well.

mother.  *Id.* at 566, 570.  The appeals court explained that the U.S. Supreme Court case *DeShaney v. Winnebago County Dep't of Soc. Servs.* controlled, where the high court held that a state had no constitutional duty to protect a child against violence at home, even though the state was aware of the abuse.  *Id.* at 566, citing *DeShaney*, 489 U.S. 189 (1989).  Relying on *DeShaney*, the court further explained that the Fourteenth Amendment does not require the state to protect the "life, liberty, and property of its citizens against invasion by private actors," unless "the state affirmatively acts to restrain an individual's freedom to act on his own behalf, either through 'incarceration, institutionalization, or other similar restraint . . . .'" *Id.* at 569.  The court explained that it is well settled that schools do not have the necessary degree of control over students to give rise to a constitutional duty to protect.  *Id.* (string citation omitted).  *Indeed, the Sixth Circuit has held that schools have no "special relationship" with students that give rise to a constitutional duty to protect those students from harm.  Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 910-911 (6th Cir. 1995) (holding in context of student death on school bus).  The *Wyke* court also rejected the mother's argument that the school had an affirmative duty to assist the student because it knew of the previous suicide attempts.  The affirmative duty only arises where the state prevents an individual from acting on his own behalf, "'not from the state's knowledge of the individual's predicament or from its expressions of intent to help him . . .'" *Id.* at 569-570, citing *DeShaney*, 489 U.S. at 197-198.

Here, Defendants did not deprive Plaintiffs of their Fourteenth Amendment right to care and companionship of Eric.  Like in *Wyke* and *Sargi*, Defendants had no affirmative duty to protect Eric from suicide at home.  That is true even if Plaintiffs' allegations were accurate that Defendants had knowledge of the bullying and harassment Eric allegedly suffered in school.  That is true even if Plaintiffs' allegations were accurate that Defendants failed to tell Plaintiff

14

Parents about that bullying.[6]  Thus, Plaintiff Parents have no plausible Fourteenth Amendment claim against Defendants.

### C.     This Court should dismiss Plaintiffs' Section 1983 claim in Count 2.

Defendants ask this Court to dismiss Plaintiffs' Section 1983 claim for Defendant Board's alleged failure to properly train its officials.  Motion p. 8.  To determine whether a plaintiff has established a Section 1983 claim, courts must examine: (1) *whether the plaintiff has asserted the deprivation of a constitutional right*; and (2) whether the school board is responsible for that violation due to the board's official policy or custom.  *Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495, 505-506 (6th Cir. 1996), citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Garner v. Memphis Police Dep't.*, 8 F.3d 358, 363 (6th Cir. 1993), citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "For liability to attach, both questions must be answered in the affirmative."  *Doe*, 103 F.3d at 506.

Here, Plaintiffs fail to allege the first prong of the Section 1983 analysis, stating that:

> [t]he actions of defendant [school board], in failing to properly train its officials and teachers in proper methods of recognizing, responding to and preventing bullying and harassment, and in permitting bullying and harassment, constitute a violation of defendant [school board's] obligations to maintain lawful policies and procedures pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  As a direct result of the actions and conduct of defendant, plaintiffs have suffered and continue to suffer extreme emotional distress, loss of companionship, and in Eric's case, loss of life.

Amended Complaint ¶¶ 26, 27.  Nowhere do Plaintiffs identify what constitutional right Defendant Board violated.  Instead, Plaintiffs assert that Defendant Board had a duty under Section 1983 to train its employees on bullying, and, because it allegedly did not, it is liable to

---

[6] Defendants vehemently deny that the allegations are accurate.  Moreover, this Court should note that, unlike in *Wyke*, Plaintiff Parents do not allege that Defendants knew Eric was suicidal. Instead, Plaintiffs allege that Defendants knew of bullying and harassment.

Plaintiffs under Section 1983.  That is simply not true.  To avoid dismissal, Plaintiffs must allege that Defendant Board violated their constitutional right.

This Court might seek to liberally construe Count 2 to assert Plaintiffs Parents' "loss of companionship" and Eric's "loss of life," both protected under the Fourteenth Amendment. Plaintiffs' Response contradicts this interpretation, however, and states that their Section 1983 claims are not being brought due to Eric's death, but due to the alleged bullying he endured at school.  Response p. 13.  Plaintiffs do not allege in their Amended Complaint and do not argue in their Response that being bullied in school amounts to a constitutional deprivation under the Fourteenth Amendment or any other constitutional amendment.  Plaintiffs, therefore, fail to assert a deprivation of a constitutional right, as required for their "failure to train" claim in Count 2.

Moreover, Plaintiffs' claim fails even if this Court somehow liberally construes Count 2 to assert that Defendant Board's failure to train resulted in Eric's bullying and, consequently, Plaintiffs being deprived of their Fourteenth Amendment rights.  Although not completely clear from Plaintiffs' Amended Complaint, Plaintiffs seem to argue that Defendant Board's failure to act resulted in Eric allegedly being bullied in school and, ultimately, in his suicide.  Amended Complaint ¶ 17.  Thus, it is Defendant Board's alleged custom of *inaction* that Plaintiffs claim violated Section 1983:

> To state a municipal liability claim under an "inaction" theory, [the plaintiff] must establish:
>
> (1) the existence of a clear and persistent pattern of [the constitutional deprivation];
>
> (2) notice or constructive notice on the part of the School Board;
>
> (3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and

16

> (4) that the School Board's custom was the "moving force" or direct causal link in the constitutional deprivation.
>
> . . . The evidence must show that the need to act is so obvious that the School Board's "conscious" decision not to act can be said to amount to a "policy" of deliberate indifference to [the plaintiff's] constitutional rights. [citation omitted] "Deliberate indifference" in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to [the constitutional deprivation].

*Doe,* 103 F.3d at 508.  Moreover, the theory of "respondeat superior is not available as a theory of recovery under Section 1983.  Rather, [the plaintiff] must show that the School Board itself is the wrongdoer." *Id.*

Here, Plaintiffs do not allege that Defendant Board had any knowledge of the alleged harassment and/or Eric's or other student's suicidal tendencies, so that the Board members made a "conscious" decision to ignore Eric's and his parents' alleged constitutional rights.  Instead, Plaintiffs allege that Defendant Horvath witnessed some bullying in school and that "other school administrators" knew about comments Eric made on a social networking site regarding bullying.  Plaintiffs further allege that two other Mentor students committed suicide due, "at least partially," to bullying.  Amended Complaint ¶ 16.  These allegations do not show that Defendant Board had any knowledge of Eric's issues in school and certainly do not show a plausible claim of "obvious, deliberate" indifference to ongoing harassment and/or suicidal tendencies.

### D.    This Court should dismiss Plaintiffs' Title IX claim in Count 3.

Plaintiffs concede that most of their Title IX count lacks merit.  Specifically, they argue that only Eric's estate's claim against Defendant Board should survive. Response p. 15.  Of course, as described in Defendants' Motion and in Section A of this Reply, Eric's estate's claims are time-barred.  Motion p. 5-7.

E.      **This Court should dismiss all claims against the individual Defendants.**

1.      **The individual Defendants have qualified immunity for Plaintiffs' Section 1983 claim.**

In a rambling argument that misstates the relevant law and Plaintiffs' allegations, Plaintiffs assert that their claim against the individual Defendants should not be dismissed based on qualified immunity.  Response p. 18.  Plaintiffs do agree with Defendants' statement of the qualified immunity standard, but next state that this issue is best left for summary judgment.  *Id.* The law is well settled, however, that a court must resolve qualified immunity questions at the earliest possible stage of litigation, as immunity is an entitlement not to stand trial.  Motion p. 15. The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (explaining that "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery").

Plaintiffs bear the burden of showing that Defendants Horvath, Spiccia, and Hoynes are not entitled to qualified immunity.  Motion p. 15.  Plaintiffs have not met their burden.  First, Plaintiffs state that "there is no doubt that a constitutional right to familial relationships exists and that as of 2007 it was clearly established . . . ."  Response p. 18.  Plaintiffs fundamentally misunderstand their burden.  The qualified immunity test requires that: (1) a constitutional right has been violated; and (2) that right was clearly established such that a reasonable official would know that their conduct violated that right.  Motion p. 15.  The question is not whether some right exists in legal theory, it is whether Plaintiffs, under the facts in this particular case, have a constitutional right protected by the Fourteenth Amendment.  As discussed in this Reply and in Defendants' Motion, Plaintiffs do not have a familial rights claim in this case.  Moreover, even if

they did, it is certainly not so "clearly established" that the individuals Defendants would know about it and/or that their alleged conduct violated it. Motion p. 15-16.

Perhaps recognizing their flawed argument, Plaintiffs next assert that Defendants Horvath, Spiccia, and Hoynes do not have qualified immunity because Plaintiffs had a clearly established right to be free from harassment under Title IX and because "defendants' obligations not to exhibit deliberate indifference to harassment and bullying is clearly established." Response p. 19. Defendants are perplexed by this argument. First, Plaintiffs forget that this qualified immunity argument is being made in response to Plaintiffs' allegation in Count 1, which states that the individual Defendants violated *Plaintiff Parents'* right to care and custody of their child *under Section 1983*. Count 1 makes no reference to the claims of Eric's estate. Also, Count 1 makes no reference to Title IX; in fact, Plaintiffs have admitted that the individual Defendants cannot be held liable under Title IX. Moreover, Plaintiffs' "deliberate indifference" reference is irrelevant, because qualified immunity asks the court to examine *Plaintiffs'* clearly established Constitutional rights, not Defendants' obligations. Regardless, Plaintiffs pull this "deliberate indifference" language from a case discussing Title IX, which has absolutely no bearing on Plaintiffs' burden to establish that the individual Defendants are not immune for violating Section 1983. *See* Response p. 19, citing *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999) (explaining that a private damages action may lie against a school board under Title IX in cases of student-on-student harassment, but only where the funding recipient acts with deliberate indifference and the harassment is so severe that it effectively bars the victim's access to an educational opportunity or benefit). Thus, for the reasons stated in Defendants' Motion, Defendants Horvath, Spiccia, and Hoynes are entitled to a qualified immunity regarding Plaintiffs' Section 1983 claim in Count 1.

19

2.    **The individual Defendants did not act "recklessly" in violation of state law.**

Plaintiffs assert that their claims against Defendants Horvath, Spiccia, and Hoynes are not subject to dismissal, because their conduct was "wanton" and "reckless."[7]  Response p. 15. Plaintiffs seem to think that O.R.C. § 2744.03(A)(6) alone is the basis for a claim against the individual Defendants.  It is not.  This section of the Revised Code is an exception to an immunity defense that lists the mental state required for school district employees to be liable for an act committed during the course of their employment.  To be liable, defendants must act "wantonly" or "recklessly" while committing (or while engaging in) some tort alleged in the Complaint.  For example, in *Piispanen v. Carter*, the case Plaintiffs rely on, the individual defendants were sued for acting wantonly and recklessly in committing various intentional torts. No. 2005-L-133, 2006 WL 1313159, at *1 (Ohio App. 11 Dist. May 12, 2006).  Here, Plaintiffs claim that the individual Defendants' actions "constitute malicious purpose, bad faith and wanton and reckless conduct in violation of Ohio Revised Code Section 2744.03(A)(6)." Amended Complaint ¶ 35.  Plaintiffs fail to assert, however, what tort the individual Defendants acted recklessly to commit.  Plaintiffs fail to state a claim.

Even if Plaintiffs had alleged some tort the individual Defendants committed, Plaintiffs do not state a plausible claim that the individual Defendants acted in a reckless or wanton manner by failing to exercise any care whatsoever or perversely disregarding a known risk. Plaintiffs seem to assert that by using the magic words "reckless" and "wanton," they can avoid

---

[7] Plaintiffs then recite the standard of review for a motion to dismiss in state court, stating that "a complaint should not be dismissed unless it appears beyond doubt . . . that the plaintiff can prove no set of facts warranting recovery."  *Id.*  This is not the appropriate standard of review.  Instead, the federal court "plausibility standard" requires Plaintiffs to amplify their claims with facts allowing the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  *See* Motion p. 3-4 (complete explanation of standard of review).

dismissal. Simple use of these words, however, does not by itself preclude dismissal of the claims against a public employee based on negligence. *See Hodge v. City of Cleveland*, No. 72283, 1998 WL 742171 (Ohio App. 8 Dist Oct. 22, 1998). A mere allegation of wanton or reckless misconduct cannot survive a motion to dismiss in the context of political subdivision immunity. *Id.*; *see also*, *Thomas v. Byrd-Bennett*, No. 79930, 2001 WL 1557516 (Ohio App. 8 Dist. Dec. 6, 2001) (granting a motion for judgment on the pleadings as no facts were alleged that would demonstrate the involvement of school employees in the failure to control students, that they acted outside the scope of their authority, or that they acted with malicious purpose, bad faith, or in a wanton or reckless manner, which would set forth exceptions to the general rules of employee immunity).

Defendants explained in their Motion that Plaintiffs' allegations do not amount to reckless conduct, as the individual Defendants could not prevent Eric's suicide and, based on Plaintiffs' allegations, they had no knowledge of Eric's suicidal thoughts. Motion p. 16-20. To rebut Defendants' argument, Plaintiffs claim they are not alleging that the individual Defendants failed to "prevent," but that they failed to "act." Response p. 17. This is a distinction without a difference. Plaintiffs seek to hold the individual Defendants liable because, according to Plaintiffs, Defendants allegedly knew of bulling, "which resulted in damages, including Eric falling into a severe depression and committing suicide." Response p. 17. From the allegations of bullying in the Complaint, Defendants could not have know that Eric would commit suicide as a result; thus, they were clearly not "reckless." Motion p. 16-20. Indeed, Plaintiffs have made no allegations whatsoever regarding Defendants Spiccia and Hoynes' specific knowledge of the alleged harassment.

**IV.     CONCLUSION**

For the foregoing reasons and argument, Defendants are entitled to judgment as a matter of law with respect to all claims asserted against them in Plaintiffs' Amended Complaint.

Respectfully submitted,

*/s/ Lindsay Ferg Gingo*
David Kane Smith (0016208)
Krista Keim (0067144)
Lindsay Ferg Gingo (0083607)
BRITTON SMITH PETERS
      & KALAIL CO., L.P.A.
3 Summit Park Drive, Suite 400
Cleveland, OH 44131
Telephone: (216) 503-5055
Facsimile:  (216) 503-5065
Email: dsmith@ohioedlaw.com
        kkeim@ohioedlaw.com
        lgingo@ohioedlaw.com

*Attorneys for Defendants Mentor Exempted*
*Village School District Board of Education,*
*Jacqueline Hoynes, Joseph Spiccia, and*
*Thomas Horvath*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of November, 2009, a copy of the foregoing *Defendants' Reply to Plaintiffs' Response to Motion for Judgment of the Pleadings* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Lindsay Ferg Gingo*
*One of the Attorneys for Defendants Mentor*
*Exempted Village School District Board of*
*Education, Jacqueline Hoynes, Joseph*
*Spiccia, and Thomas Horvath*