IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM MOHAT, *et al.*, | ) | CASE NO.:   1:09 CV 688 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| MENTOR EXEMPTED VILLAGE SCHOOL | ) | |
| DISTRICT BOARD OF EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |

This matter is before the Court on Defendants' Motion For Judgment on the Pleadings. (ECF #14). Plaintiff filed a Response to Defendants' Motion, and Defendants filed a Reply. (ECF #18, 21). The Court has carefully considered all of the pleadings, motions, briefing, and relevant law, and finds that Defendants' motion should be GRANTED.

**STANDARD OF REVIEW**

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(c) is subject to the same standard as a motion brought under Fed. R. Civ. Pro. 12(b)(6). *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *Scheid V. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n.1 (6th Cir. 1988). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favor of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is,"[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see also Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974. Conclusory allegations, or legal conclusions asserted in lieu of factual allegations are not sufficient. *Bishop v. Lucent Tech, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the

complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). It is with this standard in mind that the instant Motion must be decided. In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." *Jones v. City of Carlisle, Ky.*, 3 F.3d. 945, 947 (6th Cir. 1993) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp 971, 975 (S.D.Ohio 1993).

Pursuant to Fed. R. Civ. Pro. 12(d), if on a 12(c) motion, matters outside of the pleadings are presented, and not excluded by the Court, the motion should be treated as a summary judgment motion under Rule 56 and all parties shall be given the opportunity to present all pertinent material. Defendants motion does present information not contained in the pleadings, although most of this information is derived from public records, which are properly considered when deciding a motion to dismiss. In so far as any of the information relied on in the Motion to Dismiss may be construed as beyond the scope of a dismissal motion, the Court finds that all parties have had a full opportunity to present pertinent material, and that the Plaintiffs have countered Defendants arguments with relevant information. Therefore, the mandates of Fed. R. Civ. Pro. 12(d) have been satisfied.

## PROCEDURAL HISTORY

The Plaintiffs filed this action in March of 2009 on their own behalf, and on behalf of the Estate of Eric Mohat (their minor son). The Complaint seeks declaratory, injunctive, and

-3-

monetary relief against the Mentor Public School District, Jacqueline A. Hoynes (Superintendent of the Mentor Public School District), Joesph Spiccia (Principal of Mentor High School), and Thomas Horvath (Teacher at Mentor High School) for alleged violations of their civil rights. (ECF #1).  The Complaint alleges that Eric Mohat, a seventeen year old student at Mentor High School, was regularly bullied and harassed at school; that the school and, in particular, Mr. Horvath knew about the bullying and harassment; that the school did nothing to intervene or alleviate the problem; and, that as a result of the constant bullying and harassment, Eric Mohat eventually committed suicide.  Plaintiffs allege that as a result of these circumstances, they have been deprived of their parental rights without due process; they were deprived of their right to companionship; Eric was deprived of his right to life in violation of 42 U.S.C. §1983 (Monell claim); the school violated Title IX, 20 U.S.C. §1681; the school was negligent (or grossly negligent); and, the school's actions or failures to act were wonton, reckless, and malicious.

Defendants contend that the Estate's claims are time-barred and void, and that 42 U.S.C. §1983 and Title IX do not support causes of action on behalf of his parents.  Moreover, Defendants argue that a school's failure to recognize a student's suicidal tendencies stemming from bullying do not create liability under any of the Plaintiffs legal theories.

This lawsuit was filed on March 26, 2009.  The Cuyahoga County Probate Court named Janis Mohat personal representative of Eric Mohat's estate on June 25, 2009.   There is no dispute that Eric's estate was not established until June of 2009 - after the filing of the lawsuit, and after the running of the statute of limitations for the estate.  Further, there is no dispute that the estate was mistakenly opened in Cuyahoga County rather than Lake County, the county where Eric resided at the time of his death.  Plaintiffs admit that this was in error and they filed a

-4-

supplement to their Response in Opposition with the Court indicating that Mrs. Mohat was duly appointed as administrator of her son's estate in Lake County on November 9, 2009.

## **ANALYSIS**

A.  <u>Statute of Limitations for the Estate</u>

Defendants contend that the Estate's claims are time-barred and void.  Plaintiffs contend that under Ohio law, the formation of the estate, and the appointment of Mrs. Mohat as administrator, relates back to the filing of the Complaint.  Therefore, Plaintiffs argue that the Complaint is not barred by the two year statute of limitations and the claims of the estate should be allowed to go forward on the merits.

The Ohio Supreme Court has clearly held that a relative who has not been legally appointed as a personal representative of the decedent's estate lacks standing to pursue an action on behalf of the estate to its conclusion.  It is less clear, however, whether, under Ohio law, someone may file suit on behalf of the estate as a sort of "place holder" to avoid being barred by the statute of limitations, so long as an estate is formed and a personal representative is appointed prior to the resolution of the action.

Both parties in the instant case cite to the Supreme Court of Ohio's opinion in *Ramsey v. Neiman*, 69 Ohio St.3d 508 (1994) in support of their position on this issue.  The Court was unanimous in its judgment in that case, but was split on its reasoning.  The lead opinion, which is not actually the majority opinion in this instance, held that "[a] cause of action in wrongful death arising under R.C. Chapter 2125 must be brought in the name of a person appointed by a

-5-

court to be the administrator, executor, or personal representative of the decedent's estate." The lead opinion addressed the issue of whether a later appointed administrator could relate back to a timely filing by someone who lacked standing to bring the action in order to save the case from dismissal on statute of limitations grounds. The Court distinguished the case before it from other cases that had allowed actions to proceed, indicating that there was no clear precedent that would address the facts of the case before it, but refused to answer the specific question because the question was based on a hypothetical situation not actually present in the case before it.

The concurring opinion, which actually constituted the majority opinion based on the number of judges who signed on, did not find any requirement in R.C. 2125.02(A)(1) that the person initiating a wrongful death lawsuit be a legally appointed representative of an estate. Those Justices who joined in that opinion stated their belief that a personal representative "must be court-appointed after the complaint has been filed, but before any judgment is entered or settlement is reached." *Ramsey v. Neiman*, 69 Ohio St.3d 508 (concurring opinion). They also indicated, without providing any reason or legal basis, that the summary judgment stage would be an appropriate time to determine whether plaintiffs had or would obtain proper court appointment after filing their complaints. Although this perspective was held by the slim majority of the Court in 1994, the interpretations and guidelines set forth in that opinion were dicta in the underlying case, and therefore are not controlling precedent for us to follow.

In trying to come to a determination on this issue, this Court has also reviewed Ohio's statute on wrongful death. Section 2125.02(A)(1) states that: "a civil action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent... ." This would

-6-

tend to support the argument that a wrongful death action cannot be brought by anyone other than a legally appointed personal representative, making such an action void from its inception and ineffective at tolling the statute of limitations.

Plaintiffs argue that Section 2125.02 (C), however, could be interpreted to lend some support to the alternative argument. Section C states that "[a] personal representative appointed in this state, with the consent of the court making the appointment and *at any time before or after the commencement of a civil action for wrongful death*, may settle with the defendant the amount to be paid." *Id.* (Emphasis added.) They contend that the phrase "at any time before or after the commencement of a civil action for wrongful death" in this section would be meaningless if, in fact, an action brought by anyone other than the legally appointed personal representative were void at the time of filing.[1] This argument presumes that the phrase "before or after the commencement of a civil action" refers to when the personal representative is appointed. However, a more careful reading would indicate that the phrase relates only to the timing of the settlement, and not to the timing of the representative's appointment. In other words, it is more reasonable to read the section as saying that a personal representative appointed in this state may settle with the defendant any time before or after the commencement of a civil action for wrongful death, if the court who appointed the representative consents to the settlement. The two conditions or modifiers (timing and consent), are contained in a parenthetical that explains or clarifies how the representative "may settle with the defendant." These are not conditions

---

[1] Justice Paul Pfeifer provided some support for this position in his concurring opinion in *Ramsey v. Neiman*, 69 Ohio St.3d 508 (1994), stating that "R.C. § 2125.02 (C) mandates that a personal representative in a wrongful death case be appointed by a court before the case is settled."

-7-

relating to or modifying how or when the representative is to be appointed.  Read in this way, the statute does not address whether or when a duly appointed representative may be substituted for an improper one, it simply assumes the existence of a duly appointed representative and gives them the authority to settle claims with or without (before or after) filing a civil action for wrongful death.

The lower courts in Ohio offer no additional clarity on the issue.  The Ninth District has held that R.C. §2125.02 is to be construed liberally, and that generally the appointment of an administrator is deemed to relate back to the time of filing of a complaint.  *Stone v. Phillips*, 1993 Ohio App. LEXIS 3989 (9th Dist. 1993).  Conversely, the Fifth District has held that an action for wrongful death must be brought in the name of the personal representative of the decedent, and if it is not, neither Rule 17 nor the doctrine of relation back will apply to save the action from an expired statute of limitations if the decedent's representative is added after the statute has run. *Gottke v. Diebold, Inc.*, 1990 Ohio App. LEXIS 3564 (5th Dist. 1990).

The question was certified to the Ohio Supreme Court for consideration because this Court originally found, with regard to this issue, (1) that there is no controlling precedent in the decisions of the Ohio Supreme Court, (2)  that there is contradictory authority in the lower courts of Ohio,  and, (3) that there is potentially contradictory language within the controlling Ohio statute.  The Ohio Supreme Court accepted a modified version of the question at issue for consideration in August of 2010, (ECF #25), but in late April of 2011, it dismissed the case as having been "improvidently accepted for review."  (ECF # 26).

This lawsuit was filed on March 26, 2009.  The statute of limitations ran on March 29, 2009.  The Cuyahoga County Probate Court purported to establish Eric's estate and named Janis

-8-

Mohat personal representative of Eric Mohat's estate on June 25, 2009, well after the statute of limitations had expired. However, Cuyahoga County had no jurisdiction to open Eric's estate because, at the time of his death, he was a resident of Lake County. *See Black v. Aristech Chemical Co.,* No. 07CA3155, 2008 WL 5456383, *6 (Ohio App. 4 Dist. Dec. 23, 2008); O.R.C. § 2113.01. Therefore, there was no estate (valid or otherwise) in existence at the time the lawsuit was filed, or at the time the statute of limitations expired. Further, the motion for judgment on the pleadings was filed on September 16, 2009. Mrs. Mohat was not duly appointed as administrator of a valid estate for her son until November 9, 2009. Therefore, there was no valid estate in existence anytime prior to the filing of the dismissal motion in this action.

Although there is some support under Ohio law for allowing the appointment of a proper administrator to relate back to the filing of a Complaint, in order to establish standing under O.R.C. §2125.02, and to avoid issues with the statute of limitations, there is no indication that such a relation back has been or should be allowed when there was no valid estate in existence at the time the Complaint was filed. Further, as there is no case law in Ohio that is both clearly applicable and binding on this Court, the Court must do its best to follow and give the intended meaning to all of the terms of the applicable statute.

The applicable statute states that "a civil action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent... ." O.R.C. § 2125.02(A)(1). As there was no legally appointed personal representative in existence at the time, the requirements of O.R.C. §2125.02(A)(1) were not satisfied and that Janis Mohat lacked standing to pursue the claims on behalf of Eric or his estate. Further, because the estate was not formed and a personal

-9-

representative was not legally appointed by a court with proper jurisdiction until more than seven months after the statute of limitations expired, any claims espoused by the estate would have been barred by the statute of limitations.   Under section 2125.02(C), Mrs. Mohat, now that she is duly appointed would have the authority to settle any still existing claims of the estate without (prior to) filing a lawsuit, or after filing a lawsuit, if she was able to obtain a settlement offer, but this section does not provide any basis for allowing her to avoid the statute of limitations by relating back to the filing of a Complaint that was filed without any legal standing, and in contradiction to the requirements of the governing statute.   This Court, therefore, finds that because the estate itself was not properly established and no duly appointed representative existed prior to the expiration of the statute of limitations, the estate's claims are barred under the two year statute of limitations.

### B.  The Parents' Constitutional Claims

In Count One, Eric's Parents assert a claim, in their individual capacity, alleging that they were deprived of their procedural and substantive due process rights under the Fourteenth Amendment of the U.S. Constitution.  In their response to Defendant's Motion to Dismiss, however, Plaintiffs concede that the Complaint does not support a claim for procedural due process, and that the Court should consider only the substantive due process claim.   Individual claims for violations of substantive due process claims arising under the Fourteenth Amendment are enforceable through 42 U.S.C. § 1983 ("Section 1983").  In order to recover under this statute, a plaintiff must show that a person acting under the color of state law, deprived the plaintiff of a federal right.

Plaintiffs claim that the school, acting under the color of state law, deprived them of their substantive due process right to familial association, which is a liberty interest under the due process clause.  Under the Due Process Clause of the Fourteenth Amendment, no state can deprive "any person of life, liberty, or property, without due process of law.   However, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasions by private actors." *DeShaney v. Winnebago County Dept. Of Soc. Services*, 489 U.S. 189, 195 (1989).  Therefore, absent one of two exceptions, "it is not a constitutional violation for a state actor to ... fail to rescue those in need," and the state has no constitutional duty to protect or rescue its citizens.  *Peete v. Metro. Gov't*, 486 F.3d 217, 223 (6th Cir. 2007); see also, *DeShaney*, 489 U.S. at 196, 201.   Exceptions to this rule apply when (1) the state has custody of the person in need or some other "special relationship" that heightens their responsibility to care for a particular citizen; or (2) when a state actor acts affirmatively to create or greatly increases the risk of harm to its citizens.

In this case, the Plaintiff's Complaint does not allege that Eric was in state custody, or that any special relationship existed between him the school that would have given the state a heightened level of responsibility for his care and protection.  Further, while it may seem that a school, of all places, should provide a safe and supportive environment for the children in its care, neither party has cited any relevant law that would support a finding that the school was in a "special relationship" as that term is used in the relevant case law.  Therefore, although it is certainly reasonable for parents to expect that the school will do its best to protect their children while they are under the school's supervision, the law does not elevate this expectation to a constitutional guarantee.   The first exception to the general rule, therefore, does not apply.

-11-

Under the state-created danger exception, liability may be assessed to the state if it "cause[s] or greatly increase[s] the risk of harm to its citizens without due process of law through its own affirmative acts." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). A state-created danger claim must establish three elements:

> (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006). The basis of this lawsuit is the allegation that the school failed to intercede when other students were bullying Eric, and that, in turn, this failure to act contributed to or caused his decision to commit suicide. In other words, the Complaint, itself alleges a failure to act, not an affirmative action as the basis for its claims. Both the U.S. Supreme Court and the Sixth Circuit have repeatedly held that a failure to act, even with knowledge that a risk of harm may exist without state intervention, is not enough to confer liability under the Fourteenth Amendment. *See, e.g., DeShaney*, 489 U.S. at 197; *Patterson*, 2008 WL 4858440; *Jones v. Reynolds*, 438 F.3d 895 (6th Cir. 2006); *Schroder v. City of Fort Thomas*, 412 F.3d 724, 728-29 (6th Cir. 2005); *Weeks v. Portage County Executive Offices*, 235 F.3d 275 (6th Cir. 2000).

Plaintiffs have not made any allegations in their Complaint that would support a finding that anyone acting under the color of state law committed an *affirmative* act that created or increased the risk of harm to Eric. Further, as discussed above, although parents should be able to expect that their children will be kept reasonably safe when under the school's supervision, the school had no constitutional duty to take affirmative action to protect Eric from harm imposed by

-12-

other students through bullying and emotional and physical harassment, nor did it have a constitutional duty to take affirmative action to prevent the ultimate harm he imposed upon himself through his suicide.  Consequently, however tragic and unfair this may seem, based on the actual allegations set forth in the Complaint, and taking into consideration all of the relevant case law, Plaintiffs have not established that the school's failure to stop the bullying Eric suffered, or its failure to prevent his ultimate suicide, constitute a violation of their substantive due process rights under the Fourteenth Amendment to the U.S. Constitution.

In Count two, Eric's parents raise a claim against the Board of the Mentor Public School District, alleging failure to train in violation of its obligations to maintain lawful policies and procedures.   This claim is also brought as a Section 1983 claim.  In order to hold a Board liable, the Plaintiffs must establish that the Plaintiffs have asserted the deprivation of a constitutional right, and that the Board is responsible for the violation because of an official policy or custom. *Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. Of Educ*., 103 F.3d 495, 505-506 (6th Cir. 1996)(citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).

The Plaintiffs do not identify any constitutional right that the Board's alleged actions violated.   The Complaint asserts that the Board failed to train its employees on the proper procedures to handle bullying, but as set forth above, the school's failure to stop third parties from harming Eric (in this case the bullies, and/or Eric, himself), although tragic and possibly preventable, does not rise to the level of a constitutional violation.  There is no constitutional right to protection from the acts of third parties absent certain exceptions which do not exist in this case.  Further, Plaintiffs have not identified any constitutional rights that were violated because of the alleged lack of policy on bullying, prior to Eric's death.  Therefore,the Complaint

does not satisfy the requirements for a Section 1983 claim against the Board.

Plaintiffs also fail to satisfy the second requirement for this claim. The allegations against the Board are centered on the Board's alleged inaction with regard to training and/or establishing proper policies to curb bullying in it's schools. However, to state a municipal liability claim for inaction, the Plaintiffs must show: (1) a clear and persistent pattern of violating a constitutional right; (2) notice or constructive notice to the School Board; (3) the Board's tacit approval of the unconstitutional conduct amounting to an official policy of inaction; and, (4) that the Board's custom was the "moving force" or a direct causal link in the constitutional deprivation. Doe, 103 F.3d at 508.

In this case, the Complaint does not allege that the Board had any prior notice or constructive notice of the alleged harassment, or that the bullying would likely lead Eric to commit suicide. Although there are allegations that one teacher was aware of the bullying, there was no allegation that the Board had been notified that this was occurring, or that they would have condoned the teacher's alleged disregard for the situation. The Complaint also alleges that certain administrators could have seen messages Eric posted about the bullying, but not that anyone actually did see those posting, or that the Board was ever made aware of any potential problem disclosed by the postings. Further there are allegations that other two other Mentor students committed suicide "at least partially" due to bullying, but again there is no allegation that the Board knew that these suicides were caused by the bullying, or that it its failure to take added steps to prevent bullying rose to the level of tacit approval (by the Board) of the bullying and its consequences. Finally, there is no allegation that any action by the Board could have prevented Eric from being bullied, or ultimately from deciding to commit suicide, such that the

-14-

alleged inaction could be considered the "moving force" or direct causal link for any alleged constitutional deprivation.  Certainly, a school Board should be expected to take action to address problems that affect the safety and well-being of its students, when it is aware of such problems.  The Complaint, however, does not allege that the Board itself was ever made aware of the issues directly affecting Eric.  Therefore, under the relevant law, Plaintiffs' Complaint does not state a cause of action against the Board for a violation of Plaintiffs' s substantive due process rights under the Fourteenth Amendment of the U.S. Constitution.  Count Two must be dismissed.

Plaintiffs agree that Eric's parents cannot bring a claim under Title IX, as alleged in Count Three.  This claim, therefore, is also dismissed. The remaining claims by Plaintiffs William and Janis Mohat are state law claims that are not dependent on any federal statutes or federal Constitutional violations.  Having determined that there are no federal claims remaining, this Court declines to maintain supplemental jurisdiction over the state law claims.  Count IV, alleging negligence and/or gross negligence, and Count V, alleging malice, bad faith, and wonton and reckless conduct are, therefore, dismissed without prejudice, and may, if appropriate, be re-filed in state court.

## **CONCLUSION**

For all of the reasons set forth above, all claims brought on behalf of Eric Mohat's estate are dismissed as untimely under the appropriate statute of limitations.  The federal claims brought by Plaintiffs William and Janis Mohat in Counts One, Two and Three are dismissed with prejudice for failure to state a claim upon which relief may be granted.  Counts Four and Five, which set forth state law claims for negligence and bad faith, are dismissed without prejudice and may, if appropriate, be re-filed in state court.  This case is, therefore, dismissed.    IT IS SO ORDERED.

                                                   /s/ Donald C. Nugent
                                                  DONALD C. NUGENT
                                                  United States District Judge

DATED:   May 31, 2011